The Law Offices of Robert L. Geltzer
1556 Third Avenue
New York, New York 10128
(212) 410-0100
Robert L. Geltzer
Mark E. Bruh
*Counsel to Robert L. Geltzer,*
*Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
In re:                                                        Chapter 7

    **CONTINUITYX, INC., *et al.*,**                Case No. 13-10458 (MKV)

                          Debtors[1].                 **Jointly Administered**
-------------------------------------------------------------------
**ROBERT L. GELTZER**, as Chapter 7 Trustee
for **CONTINUITYX, INC., *et al.*,**

                       Plaintiff,

             v.                                                    Adv. Pro. No. 15-01015 (MKV)

**ROBERT FLECK**,

                     Defendant.
-------------------------------------------------------------------

**LOCAL BANKRUPTCY RULE 7056-1 STATEMENT
OF MATERIAL AND UNDISPUTED FACTS IN SUPPORT OF
<u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

Robert L. Geltzer, Esq., the Chapter 7 trustee (the "<u>Trustee</u>" or "<u>Plaintiff</u>") of the estate of ContinuityX, Inc., et al. the debtors (the "<u>Debtors</u>")[2], by his attorneys, the Law Offices of Robert L. Geltzer, hereby submits this Local Bankruptcy Rule 7056-1

---

[1] The Debtors in these cases and the case number assigned to each of the Debtors are as follows: ContinuityX, Inc. (13-10458); ContinuityX Solutions, Inc. (13-10455); and Metamora Cloud Services, Inc. (13-10459).

[2] The Defendant performed consulting services for ContinuityX, Inc. and ContinuityX Solutions. For purposes herein, the term "Debtors" refers to ContinuityX, Inc. and ContinuityX Solutions, Inc., or all three debtors.

Statement in support of his motion for summary judgment against the defendant, Robert Fleck (the "<u>Defendant</u>" or "<u>Fleck</u>"): (1) determining that the transfers to the Defendant were preferential as a matter of law; (2) avoiding the transfers to the Defendant; (3) directing that such transfers be set aside and recovering the transfers, or the value thereof, from the Defendant for the benefit of the Debtors' estate, plus pre-judgment interest.

## **MATERIAL FACTS NOT IN DISPUTE**

**A. Voluntary Petitions and Appointment of Trustee**

1. On February 14, 2013 (the "<u>Petition Date</u>"), ContinuityX, Inc. ("<u>Continuity</u>"), ContinuityX Solutions, Inc. ("<u>Solutions</u>"), and Metamora Cloud Services, Inc. ("<u>Metamora</u>") filed voluntary petitions for relief under Chapter 7 of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>") with the United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>"). <u>See</u> Affidavit of Robert L. Geltzer in Support of Plaintiff's Motion for Summary Judgment ("<u>Geltzer Aff.</u>") at ¶5.

2. On May 3, 2013, this Court issued an Order granting a motion for the joint administration of Continuity, Solutions and Metamora. <u>See</u> Geltzer Aff. at ¶7.

3. On or about February 14, 2013, Robert L. Geltzer was appointed interim trustee of the Debtors, and pursuant to Court Order, dated June 28, 2013, was designated permanent Trustee of the Debtors, and continues to operate as such. <u>See</u> Geltzer Aff. at ¶7.

**B. The Adversary Proceeding**

4. The above-captioned adversary proceeding (the "<u>Adversary Proceeding</u>") was commenced on January 29, 2015 by the filing of a Summons, and serving it and the complaint (the "<u>Complaint</u>"), dated January 28, 2015, on the Defendant on or about February 2, 2015.

5.  The Complaint was filed by the Trustee to avoid fraudulent transfers pursuant to 11 U.S.C. §§ 547 and 550(a), and to disallow claims pursuant to 11 U.S.C. § 502(d).  See Geltzer Aff. at ¶14 and Exhibit "A" (Trustee's Complaint).

6.  On March 11, 2015, the Defendant filed his Answer to the Complaint See Geltzer Aff. at ¶15 and Exhibit "B" (Defendant's Answer to Complaint).

**C.  Defendant Received Transfers of Funds From the Debtors' Accounts**

7.  According to the Complaint, within the 90-day period (the "Preference Period") preceding the Petition Date, the Debtors made eight preferential transfers totaling $42,481.31 (the "Transfers") to the Defendant as set forth below:

| Approximate Date of Transfer | Check Number(s) | Approximate Amount of Transfer |
|---|---|---|
| 11/19/2012 | 1689 | $6,822.18 |
| 11/19/2012 | 1688 | $6,723.69 |
| 12/21/2012 | 1760 | $319.68 |
| 12/21/2012 | 1761 | $423.21 |
| 12/21/2012 | 1762 | $304.23 |
| 1/22/2013 | 1802 | $6,008.32 |
| 1/22/2013 | 1801 | $4,880.00 |
| 2/12/2013 | Wire Transfer | $17,000.00 |

8.  The Transfers were made by check transfers or wire transfer from the Debtors' bank account to the Defendant, and are not in dispute.  See Geltzer Aff. at ¶15 and Exhibit "B" (Defendant's Answer to Complaint); see Geltzer Aff. at ¶17 and Exhibit "C" (Debtors' cancelled checks and bank statement).

**D.　The Transfers Were Made to the Defendant As A Creditor And In Payment of An Antecedent Debt**

9.　At all times that the Transfers were made, the Defendant was a creditor of the Debtors, as evidenced by the Defendant's invoices and the Transfers were payments on antecedent debts, as the payments were made pursuant to an obligation of the Debtors to pay the Defendant in connection with various consulting services performed by the Defendant that arose prior to the payments to him. See Geltzer Aff. at ¶18 and Exhibit "D" (Defendant's Invoices).

**E.　The Transfers Were Made During the Preference Period**

10.　According to the Debtors' cancelled checks and bank statements, the Transfers were made during the Preference Period. See Geltzer Aff. at ¶17 and Exhibit "C" (Debtors' cancelled checks and bank statement).

**F.　The Transfers Enabled the Defendant to Receive More Than He Would Have Received Through A Hypothetical Chapter 7 Liquidation**

11.　Given the fact that, as of August 3, 2016: (a) there is only $1,096,100.11(see Geltzer Aff. at ¶21) on deposit in the Debtors' estates' bank accounts; and (b) there are claims filed against the Debtors' estates in the total sum of approximately $30,742,073.05[3] (see Court's Claim Register and Geltzer Aff. at ¶21) ; and (c) any potential recoveries in connection with pending litigation will not exceed the total dollar amount of filed claims, distributions to general unsecured creditors, of which the Defendant is one, will be less than 100%.

---

[3]This sum does not include outstanding Chapter 7 administrative expenses.

**G.     The Transfers Were Made While the Debtors Were Insolvent**

12.    The Defendant attached an undated, unaudited financial statement (the "Putative Financial Statement") to his Answer to the Complaint, which he alleges:    (i) was filed with the Securities and Exchange Commission on or about November 21, 2012, and (ii) shows that the Debtors were solvent.  This purported evidence fails to rebut the presumption of the Debtors' insolvency under 11 U.S.C. § 547(f) for the following reasons:

- The Putative Financial Statement pre-dates the Transfers; and

- Based upon the Trustee's accountant's review of the Debtors' books and records, as of July 2012, AT&T stopped paying the Debtors because all of the Debtors' customers' accounts were significantly past due and the Debtors' customers were not paying the amounts due to AT&T, and AT&T had begun to terminate the accounts; thus, the Debtors were not entitled to $4,203,962 as accounts receivable attributable to AT&T, and the Putative Financial Statement should have been reduced by that amount. See Geltzer Aff. at ¶22; Exhibit "F" (AT&T's proof of claim #24); and

- Additionally, in or about September 2012, AT&T demanded that the Debtors return $6,120,445 of commissions previously paid to the Debtors (see pgs. 44-45 of Exhibit "F").  So, $6,120,445 should have appeared as a liability on the Putative Financial Statement.  If these legitimate adjustments were recorded on the Putative Financial Statement, it would have reflected assets of $21,439,709; liabilities of $27,577,110; and a negative net worth of $6,137,401; and

- Furthermore, on December 4, 2012, AT&T sued the Debtors for approximately $9,000,000 and, as a result, on December 12, 2012, the Debtors filed a Form 8-K with the Securities and Exchange Commission in which the Debtors acknowledged that its prior financial statements might be unreliable.  See Geltzer Aff. at ¶22; Exhibit "G" (Debtors' Form 8-K, dated December 12, 2012); and

- According to the Court's Claim Register, the total dollar amount of claims filed against the Debtors' estates is approximately $30,742,073.05.

**H.    Defendant's Purported Affirmative Defendant Under 11 U.S.C. § 547(c)(1)**

13.    Under 11 U.S.C. § 547(g), the Defendant bears the burden of proving any affirmative defense, including the contemporaneous exchange exception under 11 U.S.C. § 547(c)(1).  The Defendant has alleged in his Answer to the Complaint that he was an employee of the Debtor; however, the Defendant has not produced any evidence to support his bald assertion  - - and he cannot.  According to the Debtors' books and records and those documents provided to the Trustee from the Defendant, there is uncontroverted evidence which shows that the Defendant was <u>not an employee</u> of the Debtors; he was a consultant - - who invoiced the Debtors for services performed.  For example:

- The Defendant invoiced the Debtors for services performed and those invoices stated that the Defendant performed "consulting services."  <u>See</u> Geltzer Aff. at ¶22; Exhibit "D" (Defendant's invoices); and

- The Debtors' W-2 Payroll Worksheet for Employees for the period February 29, 2012 through December 28, 2012, does not list the Defendant as an employee.  <u>See</u> Geltzer Aff. at ¶22;  Exhibit "H" (Debtors' W-2 listing for 2012); and

- The Debtors' Payroll Cash Analysis for employees for the period January 14, 2013 through February 15, 2013, does not list the Defendant as an employee.  <u>See</u> Geltzer Aff. at ¶22;  Exhibit "I" (Debtors' Payroll Check Register for the period January 14, 2013 through February 15, 2013); and

**[LEFT BLANK INTENTIONALLY]**

- The portion of the Defendant's tax returns that he turned over to the Trustee for the years ending 2012 and 2013 reflect <u>no wages earned by the Defendant</u> (2012 and 2013 tax returns, line item 7 concerning wages is blank); furthermore, according to the Defendant's 2012 Schedule C-EZ "Net Profit from Business", it states that the <u>Defendant's principal business is: "Consulting - Accounting Services</u>," and shows earnings in connection with consulting services! <u>See</u> Geltzer Aff. at ¶22; Exhibit "J" (Defendant's tax returns). And what is troublesome after reviewing the Defendant's tax returns is that the Defendant failed to disclose on his 2013 tax returns those funds that the Debtors' remitted to him in 2013 for consulting services which amounted to $27,888.32.

Dated: New York, New York
August 3, 2016

/s/ Robert L. Geltzer
ROBERT L. Geltzer
Chapter 7 Trustee of
ContinuityX, Inc. *et al.*
1556 Third Avenue, Suite 505
New York, New York 10128
(212) 410-0100