| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>----------------------------------------------------------------x<br>In re<br><br>CONTINUITYX, INC., *et al.*,<br><br><br><br>                            Debtors.<br>----------------------------------------------------------------x<br>ROBERT GELTZER, as Trustee for the estate of<br>CONTINUITYX, INC., *et al.*,<br><br>                            Plaintiff.<br><br>                            v.<br><br>ROBERT FLECK,<br><br>                            Defendant.<br>----------------------------------------------------------------x | **NOT FOR PUBLICATION**<br><br><br><br>Chapter 7<br><br>Case No. 13-10458 (MKV)<br>(Jointly Administered)<br><br><br><br><br><br><br>Adv. Proc. No. 15-01015 (MKV) |

*MEMORANDUM DECISION*
*GRANTING THE TRUSTEE'S MOTION FOR SUMMARY JUDGMENT*


APPEARANCES:

LAW OFFICES OF ROBERT L. GELTZER
*Counsel for Plaintiff Robert Geltzer, as Trustee*
*for the estate of ContinuityX, Inc., et al.*
1556 Third Avenue, Suite 505
New York, New York 10128
   By:    Robert L. Geltzer
             Mark E. Bruh

Robert J. Fleck, Lisle, Illinois*, pro se*

MARY KAY VYSKOCIL
UNITED STATES BANKRUPTCY JUDGE

       Before the Court is the motion filed by Robert L. Geltzer, as trustee (the "Trustee") of

ContinuityX, Inc., ContinuityX Solutions, Inc. ("Solutions") and Metamora Cloud Services,

Inc. (collectively, the "Debtors"), pursuant to Rule 56 of the Federal Rules of Civil Procedure (each, a "Rule"), made applicable herein by Rule 7056 of the Federal Rules of Bankruptcy Procedure, seeking summary judgment on his claim to recover $28,541.31, as set forth in the Trustee's complaint (the "Complaint") (the "Motion") [ECF No. 24].[1]  For the reasons set forth below, the Motion is hereby GRANTED.

*BACKGROUND*

On February 14, 2013 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code.  On January 29, 2015, the Trustee filed the Complaint in this adversary proceeding against Robert J. Fleck (the "Defendant") to avoid and recover the value of several pre-petition transfers pursuant to sections 547 and 550 of the Bankruptcy Code, and to disallow claims pursuant to section 502(d) of the Bankruptcy Code.  In the Complaint, the Trustee alleges that the Debtors made the following payments, totaling approximately $42,481.31, to the Defendant within the 90-day period preceding the Petition Date (collectively, the "Transfers"):

| Approximate Date of Transfer | Check Number | Approximate Amount of Transfer |
|---|---|---|
| 11/19/2012 | 1688 | $6,723.69 |
| 11/19/2012 | 1689 | $6,822.18 |
| 12/21/2012 | 1760 | $319.68 |
| 12/21/2012 | 1761 | $423.21 |
| 12/21/2012 | 1762 | $304.23 |
| 1/22/2013 | 1801 | $4,880.00 |
| 1/22/2013 | 1802 | $6,008.32 |

---

[1] Unless otherwise noted, all references to "ECF No." refer to docket entries in Adversary Proceeding Number 15-01015 (MKV).

2

| Approximate Date of Transfer | Check Number | Approximate Amount of Transfer |
|---|---|---|
| 2/12/13 | Wire transfer | $17,000.00 |

Complaint, ¶12. The Trustee seeks to recover only $28,541.31 of the Transfers because, based upon the Trustee's examination of the Debtors' books and records, the Trustee acknowledges that the Defendant would have a "new value" affirmative defense under Bankruptcy Code section 547(c)(4) in the amount of $13,940. *See* Memorandum of Law in Support of Plaintiff's Motion for an Order Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7056 of the Federal Rules of Bankruptcy Procedure Granting Summary Judgment to the Plaintiff (the "Moving Br.") at 1, 16. [ECF No. 24-1]; Affidavit of Robert L. Geltzer, Chapter 7 Trustee, in Support of Plaintiff's Motion for Summary Judgment (the "Geltzer Affid."), Exh. K (Plaintiff's New Value Analysis) [ECF No. 24-3].

On or before the date of the Transfers, the Defendant provided certain financial accounting related services to Solutions, and issued various invoices to Solutions, which set forth the details of the services provided and the amount of payment owing for such services. *See* Geltzer Affid., Exh. D (Defendant's Invoices). The Defendant also submitted expense reports to Solutions for reimbursement of his out-of-pocket expenses. *See id.* The Defendant, appearing *pro se*, admits that he received each of the Transfers from the Debtors on account of an antecedent debt (the financial accounting services) and admits that the Transfers were received within the 90 days preceding the Petition Date. However, the Defendant argues that summary judgment should be denied for two reasons: (1) the Debtors were solvent at the time the Transfers were made; and (2) the Debtors made the Transfers to the Defendant on account

of services the Defendant provided to the Debtors as Solutions' employee. *See* Letter from Robert J. Fleck, dated September 8, 2016 [ECF No. 30] (the "Def. Opp."). The former is an element of the Trustee's *prima facie* case under section 547(b)(3), and the latter is an affirmative defense to the Trustee's claim under section 547(c).

The Court conducted a hearing on October 9, 2016 to consider the Motion (the "Hearing"). For the reasons set forth below, the Motion is granted. Since the parties have consented to the entry of final judgment by this Court,[2] judgment should be entered for the Trustee.

## *DISCUSSION*

Rule 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under Rule 56(c), in order to preclude summary judgment, the fact in dispute must be material. Whether a fact is material is to be determined by substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If a fact is material, the court must then determine whether the dispute about that material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* If the fact may be reasonably resolved in favor of either party, then there is a genuine factual issue that may only be resolved by the trier of facts and summary judgment

---

[2] The Trustee has consented to the entry of final orders or judgments by this Court. *See* Complaint, ¶ 3. Pursuant to Local Bankruptcy Rule 7012-1, which was in effect at the time the Defendant's response to the Complaint was filed, the Defendant was required to include in his responsive pleading, a statement that he does, or does not, consent to entry of final orders or judgment by this Court. At the Hearing, the Court explained to the Defendant that he was obligated, but failed, to include this statement in his response to the Complaint. The Defendant then stated on the record at the Hearing that he consents to the entry of final orders or judgment by this Court.

4

must be denied. *See id.* at 250. In considering a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-159 (1970).

After a party opposing a summary judgment motion has been afforded a sufficient time for discovery, summary judgment must be entered against the opposing party if such party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). There is no genuine issue concerning any material fact when "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

The summary judgment standard is interpreted in a way to support its primary goal of "dispos[ing] of factually unsupported claims or defenses." *Id.* at 323-24. The summary judgment movant meets its burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

\*    \*    \*

**I.    The Trustee's Section 547 Claims**

Bankruptcy Code section 547(b) provides that, subject to certain exceptions, a trustee may avoid any transfer or an interest of the debtors in property if such transfer:

(1) was to or for the benefit of a creditor;

(2) was for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) was made while the debtors were insolvent;

5

    (4) was made on or within 90 days before the petition date; and

    (5) enabled the recipient to receive more than the recipient would have received if the transfer had not been made and the recipient received such payments for the debt to the extent provided under the Bankruptcy Code.

11 U.S.C. § 547(b).

The Trustee bears the burden of proving, by a preponderance of the evidence, each of the elements identified in section 547(b) and, once the Trustee has met his burden, the Defendant bears the burden of proving any affirmative defenses set forth in Bankruptcy Code section 547(c). *See* 11 U.S.C. § 547(g); *Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.)*, 78 F.3d 30, 34 (2d Cir. 1996). Once a trustee has met its burden under section 547, and in the absence of any affirmative defenses, pursuant to section 550 of the Bankruptcy Code, the trustee may recover the transferred property or its value. *See* 11 U.S.C. § 550.

The Defendant does not raise any dispute with respect to any element of the Trustee's section 547 claim <u>except</u> whether the Debtors were solvent at the time the Transfers were made. *See* Def. Opp. at 4.

### A. The Uncontested § 547(b) Elements

#### 1. *Transfers of the Debtors' Property*

Section 547 of the Bankruptcy Code was designed to permit the recovery of property of a debtor's estate that, but for the transfers, would have been available for distribution to creditors. *See Begier v. IRS*, 496 U.S. 53 (1990); *Cassirer v. Herskowitz (In re Schick)*, 234 B.R. 337, 342 (Bankr. S.D.N.Y. 1999). Property of a debtor's estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §

6

541(a). Thus, in an action to recover a transfer or its value under section 547, a trustee "must demonstrate that the debtor had legal title to a bank account and control over its use, including paying [its] own creditors." *In re Schick*, 234 B.R. at 343. For purposes of section 547, such control "means the legal right to use the funds." *Id.* (citing *Jenkins v. Chase Home Mortgage Corp. (In re Maple Mortgage, Inc.)*, 81 F.3d 592, 596 (5th Cir. 1996)).

The Trustee asserts that the Transfers were made by seven check transfers and one wire transfer from the Debtors' bank accounts. *See* Geltzer Affid., ¶ 17, Exh. C (Debtors' cancelled checks and bank statement). The Defendant does not contest that the Transfers constitute transfers of the Debtors' property for purposes of Bankruptcy Code section 547(b). The Court finds that there is no genuine issue of material fact, and the Trustee his met his burden of proof, with respect to this element of his claim.

   2. *Transfers for the Benefit of a Creditor on Account of an Antecedent Debt*

A "creditor" is defined in section 101(10) of the Bankruptcy Code as, *inter alia*, an entity that has a claim against the debtor that arose at the time of, or prior to, the order for relief concerning the debtor. 11 U.S.C. 101(10). A "claim" is defined under the Bankruptcy Code as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A). A debt is considered "antecedent" for purposes of section 547 of the Bankruptcy Code if it was incurred prior to the alleged transfer. *See, e.g.*, *Pereira v. Lehigh Sav. Bank, SLA (In re Artha Mgmt.)*, 174 B.R. 671, 678 (Bankr. S.D.N.Y. 1994); *Nisselson v. Salim (In re Big Apple Volkswagen, LLC)*, Adv. Proc. No. 11-02251 (JLG), 2016 WL 1069303, at *10 (Bankr. S.D.N.Y. March 17, 2016).

7

The Trustee asserts, and the Defendant does not dispute, that the Transfers were on account of an antecedent debt owed by the Debtors to the Defendant for the services he performed, as set forth in the invoices. *See* Geltzer Affid., ¶ 19. Copies of the invoices were attached as Exhibit D to the Geltzer Affidavit. The Court finds that the Trustee has met his burden of proof with respect to this element of his claim.

3. *The Transfers Were Made within the Ninety Days of the Petition Date*

The dates on the checks and the date of the wire transfer set forth in the Debtors' bank statement establish that the Transfers were made within 90 days of Petition Date, and the Defendant does not assert that there are any issues of fact with respect to this element of the Trustee's claim. *See* Geltzer Affid., Exh. C. The Court therefore finds that the Trustee has met his burden of proof with respect to this element of his claim.

4. *The Transfers Enabled the Defendant to Receive More Than He Would Have Received Pursuant to a Distribution Under Chapter 7*

Under Bankruptcy Code section 547(b)(5), the Trustee must demonstrate that the Transfers enabled the Defendant to receive more than he would have received in the chapter 7 case had the Transfers not been made and had the Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code. 11 U.S.C. § 547(b)(5). This requires a comparison between what the Defendant actually received and what he would have received under the chapter 7 distribution provisions of the Code if he had not received each of the Transfers. Accordingly, in order for the Trustee to make out a *prima facie* case with respect to this element of his section 547 claim, the Trustee must determine the percentage distribution that the Defendant would have received under the Code and compare this amount to the percentage distribution that the Defendant actually received on account of the Transfers.

8

The Trustee contends that section 547(b)(5) should be satisfied whenever the plaintiff shows that the creditor would receive less than 100% in a hypothetical chapter 7 distribution. *See* Moving Br. at 13. Although this is generally the case (*see, e.g.*, *Savage & Assocs. V. Mandl (In re Teligent Inc.)*, 380 B.R. 324, 339 (Bankr. S.D.N.Y 2008)), this presupposes that the Defendant received a 100% distribution as a result of the Transfers.

Here, the Trustee asserts that the Defendant issued invoices and expense reimbursement requests totaling $55,907.12, and that the Transfers totaled $42,481.31. *See* Local Bankruptcy Rule 7056-1 Statement of Material and Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment, ¶ 7; Geltzer Affid., Exh. E (Antecedent Debt Analysis). Thus, it appears that the Defendant has received an approximate 76¢ distribution for each dollar claimed in the invoices and reimbursement requests, *i.e.* less than a 100% distribution. Accordingly, simply demonstrating that creditors in the Debtors' Chapter 7 cases will receive less than a 100% distribution is insufficient here for purposes of section 547(b)(5). Instead, the Trustee must establish that creditors in the Debtors' chapter 7 cases would receive less than an approximate 76% distribution.

Although the Trustee has failed to provide an estimate of the percentage distribution that the Defendant would have received as a creditor in the Debtors' chapter 7 cases, the Trustee has demonstrated facts sufficient to allow the Court to conclude that, but for receipt of the Transfers, the Defendant would have received less than the approximate 76% distribution he actually received if he were to recover pursuant to a distribution in this case. Specifically, the Trustee points out that, according to the Court's claim register, the amount of claims filed totals approximately $30,742,073.05 and, as of August 3, 2016, the Trustee has $1,096,100.11

9

on deposit in the Debtors' estates' bank accounts "which is a small fraction of the total amount of claims filed against the estates." *See* Moving Br. at. 13; Geltzer Affid., ¶ 21. Thus, the Trustee has established that the Transfers enabled the Defendant to receive more than he would have received in the chapter 7 case if the Transfers had not been made, and if the Defendant received payment on account of the invoices and reimbursement requests to the extent provided under the Bankruptcy Code. The Court therefore finds that the Trustee has met his burden of proof with respect to this element of his claim.

### B. The Contested § 547(b) Element: Solvency

Under Bankruptcy Code section 547(b)(3), the Trustee must demonstrate that the Debtors were insolvent at the time the Transfers were made, *i.e.* between November 2012 and February 2013 (the "Transfer Period"). For purposes of a section 547 analysis, the Debtors are presumed to have been insolvent on and during the 90 days preceding the Petition Date, here, from November 16, 2012 through to the Petition Date. *See* 11 U.S.C. § 547(f). Thus, the Debtors are presumed to have been insolvent during the Transfer Period. A defendant may rebut the presumption of insolvency by introducing evidence that the debtor was not, in fact, insolvent at the time the Transfers were made. *See In re Roblin Indus., Inc.*, 78 F.3d at 34. If the Defendant introduces evidence to rebut the presumption, the Trustee then is required to satisfy his burden of proving insolvency by a preponderance of the evidence. *See id.*

The term "insolvent" as applied to a corporation is defined under section 101(32) of the Bankruptcy Code to mean a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's

10

creditors; and (ii) property that may be exempted from property of the estate under section 522 of [the Bankruptcy Code]."

In an effort to rebut the presumption of insolvency, the Defendant contends that "[t]he Company's filings with the Securities and Exchange Commission dated September 28, 2012 (June 30, 3012 Form 10-K - Exhibit 7) and November 21, 2012 (September 30, 2012 Form 10-Q – Exhibit A) indicate that the Company was in fact solvent." *See* Def. Opp. at 4. The Form 10-K, relied on by the Defendant, sets forth the financial information of Solutions for the year ended June 30, 2012. *See* Def. Opp., Exh. 7. The Form 10-Q, relied on by the Defendant, sets forth financial information concerning Solutions for the quarterly period ending September 30, 2012. *See* Def. Opp., Exh. 8. Because both the Form 10-K and the Form 10-Q refer to the Debtor's financial condition at a time that precedes the Transfer Period, the Court finds that these documents, without more, are insufficient to rebut the presumption of insolvency during the Transfer Period or to raise a genuine issue of material fact with respect to the Debtors' solvency at the time of the Transfer Period.

*   *   *

For the reasons set forth above, the Trustee has made out a *prima facie* case with respect to his claim under section 547(b) that the Transfers may be avoided and that, in the absence of any affirmative defense under section 547(c), the Trustee is entitled to judgment as a matter of law. Thus, the remaining issue before the Court is whether there is any genuine issue of material fact with respect to the Defendant's affirmative defense.

11

**II. The Defendant's Affirmative Defense**

The Defendant asserts that the Trustee may not recover the Transfers because the Defendant was an employee of the Debtors at the time he received the Transfers. *See* Def. Opp. at 5. The Trustee contends, by contrast, that the Defendant was not an employee of the Debtors, but rather, he was a consultant. *See* Moving Br. at 15.

The Defendant, who appears *pro se*, understandably, has not cited any case law or statutory authority for his contention that a transferee's status as an employee *a fortiori* renders the transfers made by his employer not avoidable under section 547 of the Bankruptcy Code. The Court has analyzed the Defendant's arguments under section 547(c) and case law construing that provision which recognizes that, in certain circumstances, transfers to an employee may be exempt from avoidance.[3]

Bankruptcy Code section 547(c)(1) provides that a trustee may not recover a transfer under 547 to the extent that the transfer was (a) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor, and (b) in fact a substantially contemporaneous exchange. 11 U.S.C. § 547(c)(1). Thus, a transfer that otherwise meets the criteria set forth in section 547(b) is not subject to avoidance, under section 547(c)(1), to the extent that: (1) the recipient of the transfer provided new value to the debtor in exchange for the transfer; (2) both the debtor and the recipient of the transfer intended the new value and the transfer to be contemporaneous; and (3) such exchange actually was contemporaneous. *See Official Committee of Unsecured Creditors of*

---

[3] Section 547(c) also includes a defense for transfers made in the ordinary course of business of the debtor and the transferee. 11 U.S.C. § 547(c)(2). The Court finds that this defense is inapplicable based on the facts alleged by the Defendant.

12

*360Networks (USA) Inc. v. U.S. Relocation Services, Inc. (In re 360Networks (USA) Inc.)*, 338 B.R. 194, 204 (Bankr. S.D.N.Y. 2005).  The term "new value," for purposes of section 547, "means money or money's worth in goods, services or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation."  11 U.S.C. § 547(a)(2).  The purpose of the exception set forth in section 547 "is 'to encourage creditors to continue to deal with troubled debtors,' and transfers protected under § 547(c)(1) are not preferential 'because other creditors are not adversely affected if the debtor's estate receives new value.'"  *In re 360Networks (USA) Inc.*, 338 B.R. at 204 (citing *Jones Truck Lines, Inc. v. Central States, S.E. and S.W. Areas Pension Funds (In re Jones Truck Lines, Inc.)*, 130 F.3d 323, 326 (8th Cir.1997)).

  As an initial matter, the Court finds that the Defendant has not asserted, much less proven, that both he and the Debtors intended any of the Transfers to be contemporaneous exchanges for new value.  Instead, he contends that the Transfers are not recoverable under section 547 simply because they were made to him as payments for services he provided to the Debtors as an employee.

  Applying section 547(c)(1), courts have held that timely payments of salary to an employee in exchange for the employee's continued services to the debtor may be excepted from recovery as contemporaneous exchanges for new value.  *See, e.g.*, *Jacobs v. D'Allessandro (In re Dewey & LeBoef LLP)*, Adv. Proc. No. 14-01919 (MG), 2014 WL 4746209, at *9 (Bankr. S.D.N.Y. Sept. 23, 2014) ("Courts have interpreted [new value] to

13

include the continued services of employees and payments to those employees may be construed as 'contemporaneous' so long as the employer-debtor keeps current by paying the employees' salaries and benefits when due."); *In re Jones Truck Lines, Inc.*, 130 F.3d at 327 ("If the employer also resumes paying the employee's current salary and benefits when due, and the employee keeps working, those current payments are contemporaneous exchanges for 'new value,' the employees' continuing services."); *Official Comm. of Former Partners v. Brennan (In re Labrum & Doak, LLP)*, 227 B.R. 383, 387 (Bankr. N.D. Ill. 1998) ("We know of no case holding that salaries paid to employees as work is performed . . . are transfers subject to avoidance as preferences.").

The Defendant asserts that the following evidence establishes that he was an employee of the Debtors at the time the Transfers were made:

1. *The Employment Letters*: The Defendant has provided an undated and unsigned letter from Anthony Roth, the former Chief Financial Officer of Solutions (the "Roth Letter"); the Defendant's letter to Solutions, dated February 14, 2102, to the attention of David Barnes, expressing his interest in becoming a controller for Solutions (the "February 2012 Letter"); and a letter from the Defendant to Solutions, dated March 7, 2012, to the attention of Anthony Roth, with whom the Defendant had met regarding a job posting by the Debtors, (the "March 2012 Letter" and together with the Roth Letter and the February 2012 Letter, the "Employment Letters"). *See* Def. Opp., Exh. 1;

2. *The Missing W-4 Form*: The Defendant asserts that he was asked to complete a W-4 tax form for the Debtors, but is unable to produce the W-4 form that he

14

    completed because the Trustee failed to produce the document in response to the Defendant's document request. *See* Def. Opp., Exh. 2; and

3. *The Defendant's Missing Computer*: The Defendant asserts that information saved on his computer, which was located at the Debtors' premises, would lend additional evidence to support the Defendant's contention that, at the time of the Transfers, he was an employee of the Debtors, and that but for the Trustee's negligent failure to secure that computer from the Debtors' premises, such evidence would have been available to the Defendant. *See* Def. Opp., Exh. 5.

    Neither the February 2012 Letter nor the March 2012 Letter is relevant to whether the Defendant was an employee of the Debtors at the time the Transfers were made. In the February 2012 Letter, the Defendant enclosed his resume and expressed his interest in Solutions' need for a controller, as advertised in a networking newsletter and his desire to meet and further discuss Solutions' needs. Similarly, in the March 2012 Letter, the Defendant thanked Mr. Roth for meeting with him to discuss the controller position and stated his belief that his background and experience would make him a valuable asset to the management team at Solutions. Neither letter indicates that the Defendant had been given the offered position. Moreover, neither letter indicates that any potential future relationship between the Defendant and Solutions would be one of employer/employee. The Court further finds that the Roth Letter, which is both undated and unsigned, is inadmissible under the Federal Rules of Evidence. As such, the Court finds that the Defendant has failed to offer any competent evidence to support his defense that he was an employee entitled to a finding of non-avoidability under section 547(c)(1).

The Defendant's contention that additional evidence would be available to him (*i.e.* the completed W-4 form and files purportedly saved on the Defendant's computer, including files pertaining to 1099 forms that were to have been issued by the Debtors) had the Trustee's agent recovered the Defendant's computer is insufficient to raise a genuine issue of material fact for purposes of the Trustee's Motion. The Parties were afforded ample opportunity to, and did in fact, conduct discovery in this adversary proceeding. During discovery, the Defendant requested, on several occasions, that the Trustee provide him with a copy of his completed W-4 form and certain files on his computer (including supplemental W-2s and 1099s that were to be issued by the Defendant on behalf of the Debtors) that, according to the Defendant, would enable him to establish that he was an employee of the Debtors. *See, e.g.*, Letter from the Defendant to the Court, dated April 28, 2016 [ECF No. 19]; Letter from the Defendant to the Court, dated May 26, 2016 [ECF No. 21]; Letter from the Defendant to the Trustee, dated August 25, 2016 [ECF No. 27]. By letter to the Defendant dated September 2, 2016, the Trustee stated that he does not have a copy of the Form W-4 which the Defendant alleges to have completed, and that he never received the computer to which the Defendant refers. [ECF No. 26].

The Defendant now contends that the Trustee's agents were negligent in failing to procure the computer and Form W-4. *See* Def. Opp. at 3. The agent to which the Defendant refers is MYC & Associates, Inc. ("MYC"), a custodial firm, which was retained by the Trustee to take possession of the Debtors' books and records, and others physical assets located in New York, California, Illinois and Hong Kong. *See* Order Authorizing Retention of MYC & Associates, Inc., as Custodian. [Case No. 13-10458 (MKV), ECF No. 99]. In support of his

16

Motion, the Trustee submitted an affidavit of Victor M. Moneypenny, a principal of MYC, sworn to on October 4, 2016, wherein Mr. Moneypenny states that he visited the Debtors' business premises on March 1, 2013 (approximately two weeks after the Petition Date) with his business partner and an associate, that they packed approximately 45 boxes of records, memorabilia and computer equipment, and that when they left, there were no computers and no business records remaining on the Debtors' premises. *See* Trustee's Reply in Support of His Motion for Summary Judgment, Exh. 4 (also referred to as Exh. D) [ECF No. 31]. The Court finds that the Defendant has failed to present any competent and admissible evidence to substantiate his allegations that the missing computer or completed Form W-4 exist, or that the Trustee's agents were negligent in failing to procure them.

Based on the foregoing, the Defendant has failed to prove the non-avoidability of the Transfers on the grounds that the Transfers were a contemporaneous exchange for new value under section 547(c)(1), on which he bears burden of proof. *See* 11 U.S.C. § 547(g).

The Court notes, however, that notwithstanding that the Defendant has not raised a genuine issue of material fact with respect to an affirmative defense under section 547(c)(1), the Trustee does not seek to recover the value of all of the Transfers (totaling $42,481.31). Instead, the Trustee acknowledges that, by reason of the Defendant's provision of consulting services to the Debtors, and according to the Debtors' books and records, the Defendant might have a "new value" defense under Bankruptcy Code section 547(c)(4), which provides an exemption for transfers to a creditor to the extent that a creditor gave new value to the debtor after the transfers were made. *See* Moving Br. at 16. Although the *pro se* Defendant has not raised this argument, the Trustee has attached as Exhibit K to the Geltzer Affidavit a new value

17

analysis, pursuant to which the Trustee calculates that, under section 547(c)(4), the "Defendant is, at most, able to assert a new value offset of $13,940.00." Moving Br. at 16. For this reason, the "Trustee seeks to avoid and recover only $28,541.31 . . ." of the Transfers. Moving Br. at 1.

In sum, the Court concludes that the Defendant has failed to meet his burden of proof or even to demonstrate a material issue of fact with respect to any available defense to the Trustee's claim. The Trustee has, nonetheless, afforded the Defendant an exemption from avoidance pursuant to section 547(c)(4) in the amount of $13,940. Accordingly, the Trustee is entitled to judgment in the amount of his claim offset by the new value credit acknowledged in the Trustee's Moving Brief.

### III. Pre-judgment Interest

The Trustee requests pre-judgment interest from the date of the Complaint in an amount to be determined by the Court. Although the Bankruptcy Code does not expressly provide for an award of pre-judgment interest in an action commenced under section 547, courts rely on the word "value" in section 550(a) as authorizing an award of interest. *See McHale v. Boulder Capital LLC (In re 1031 Tax Group, LLC)*, 439 B.R. 84, 87 (Bankr. S.D.N.Y. 2010). The award of pre-judgment interest is discretionary, and "absent a sound reason to deny prejudgment interest, such interest should be awarded." *See id; see also Buchwald Capital Advisors LLC v. Metl–Span I., Ltd. (In re Pameco Corp.)*, 356 B.R. 327, 342 (Bankr. S.D.N.Y. 2006). The purpose of awarding pre-judgment interest in an action to recover a preferential transfer "is to restore the estate to the full value of the asset transferred in order to compensate it for the loss of time value of the asset." *In re Pameco Corp.*, 356 B.R. at 342. Based on the

circumstances of this case, pre-judgment interest is awarded at the Federal rate from the date of the Complaint (January 28, 2015).

## *CONCLUSION*

For the reasons discussed above, the Trustee's Motion is granted. The Trustee is directed to settle an order consistent with the foregoing on ten days' notice to the Defendant.

Dated:   New York, New York
         March 17, 2017

                                   *s/ Mary Kay Vyskocil*
                                   Honorable Mary Kay Vyskocil
                                   United States Bankruptcy Judge